**In re Baikunth GOSWAMI and Sharon Goswami, Debtors.**

**Baikunth Goswami and Sharon Goswami, Appellants,**

v.

**MTC Distributing, Appellees.**

**BAP No. EC–03–1311–PMoN.**

**Bankruptcy No. 98–11109–B–7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 20, 2003.

Filed Dec. 31, 2003.

Thomas H. Armstrong, Law Office of Thomas H. Armstrong, Fresno, CA, for Baikunth and Sharon Goswami.

Before PERRIS, MONTALI and NAUGLE,[1] Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

In this appeal, chapter 7[2] debtors sought to amend their exemption schedule after their case was reopened for the purpose of avoiding a judicial lien. The bankruptcy court denied the debtors' motion to avoid the lien, holding that their right to amend their exemption schedule terminated upon closure of the bankruptcy case.

1. Hon. David N. Naugle, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Because this conclusion is based on a misconstruction of the applicable statute and bankruptcy rule, we REVERSE and REMAND.

## FACTS

Baikunth and Sharon Goswami ("debtors") filed a bankruptcy petition in 1998. They listed real property located at 3221 East Harvard Avenue, Fresno, California ("the property") on their Schedule A. Debtors valued the property at $60,000 and listed first and second deeds of trust totaling $70,000. Debtors did not claim an exemption in the property. There were no objections to the exemptions that debtors did claim.

MTC Distributing ("MTC") obtained a prepetition judgment against debtor Baikunth Goswami. Approximately one month before debtors filed their bankruptcy petition, MTC recorded the judgment, thereby obtaining a judicial lien against the property. Apparently unaware of this fact, debtors listed MTC as an unsecured creditor in their original bankruptcy papers. *See* Schedule F at p. 4; Statement of Financial Affairs at p. 2.

After debtors received their discharge, the court entered an order approving the trustee's no asset report, discharging the trustee and closing the bankruptcy case.

Almost five years later, debtors filed an Ex Parte Application to Reopen Case, which was granted. After the case was reopened on March 19, 2003, debtors filed an Amended Schedule C—Property Claimed as Exempt, asserting an exemption in the property. Debtors also filed a motion to avoid MTC's judicial lien under § 522(f)(1)(A).

Although there was no objection to the amended exemption or opposition to the motion to avoid MTC's lien, the bankruptcy court entered an order denying debtors' motion to avoid MTC's lien. In denying debtors' motion, the court stated as follows:

> This court has recently ruled that a debtor is not entitled to amend the schedules to exempt a scheduled asset under subsection 522(b), *after the case is closed,* for purpose of exercising the remedies available under subsection 522(f). *In re Oster,* [293] B.R. [242], 2003 WL 21209996 (Bankr. E.D.Cal.[2003]). The basic facts of this case are identical to the facts in *Oster*—the Debtors failed to "exempt" their over-encumbered Residence until after their case was closed. The analysis set forth in *Oster* is equally applicable here. The Debtors' right to amend their exemptions under subsection 522(b) terminated upon closure of the bankruptcy case. The relief which the Debtors seek is not available for a scheduled asset which was not properly exempted before the case was closed.

Findings of Fact and Conclusions of Law Re Motion to Avoid Judicial Lien of MTC Distributing, 2:19.5—3:4 (original emphasis; footnote omitted). Debtors timely appealed.

## ISSUE

Whether the bankruptcy court erred in concluding that debtors' right to amend their exemption schedule terminated upon closure of their bankruptcy case.

## STANDARD OF REVIEW

 "Interpretation of Section 522(f) is a legal issue reviewed *de novo.*" *In re Higgins,* 201 B.R. 965, 966 (9th Cir. BAP 1996). "Questions regarding the right of a debtor to claim exemptions are questions of law subject to *de novo* review[.]" *In re Arnold,* 252 B.R. 778, 784 (9th Cir. BAP 2000).

## DISCUSSION

### A. *Overview*

With certain limitations not relevant here, § 522(f)(1) provides that a

debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien[.]

Section 522(b) permits a debtor to "exempt (1) property under the federal exemptions contained in Section 522(d), unless State law does not so authorize, or (2) property exempt under State or local law, or other federal law." *In re Higgins*, 201 B.R. 965, 966 (9th Cir. BAP 1996).

California has opted out of the federal exemption scheme. *Id.* Under California law, a debtor in bankruptcy may choose from two alternative sets of exemptions: (1) the exemptions available under Cal.Civ. Proc.Code § 703.140(b), or (2) the regular state law exemptions. 1 J. Scott Bovitz, PERSONAL AND SMALL BUS. BANKR. PRACTICE IN CAL. § 4.44 (2003).

In this case, debtors elected to claim their exemptions under Cal.Civ.Proc.Code § 703.140(b) which, at the time debtors filed their petition, stated in relevant part as follows:

The following exemptions may be elected . . . :

(1) The debtor's aggregate interest, not to exceed fifteen thousand dollars ($15,-000) in value, in real property or personal property that the debtor . . . uses as a residence . . . .

. . . .

(5) The debtor's aggregate interest, not to exceed in value eight hundred dollars ($800) plus any unused amount of the exemption provided under paragraph (1), in any property.[3]

Cal.Civ.Proc.Code § 703.140(b)(5) is referred to as "the 'wild card' exemption because it can be used to protect any kind of property whatsoever[.]" 1 Bovitz, PERSONAL AND SMALL BUS. BANKR. PRACTICE IN CAL. § 4.45. Thus, when debtors filed their petition, a total exemption of $15,800 was available under Cal.Civ.Proc.Code § 703.140(b)(5) to exempt any kind of property, if the total amount provided for under (b)(1) was unused.

Debtors did not claim any part of the exemption provided for under Cal.Civ. Proc.Code § 703.140(b)(1) for real or personal property used as a residence. Instead, they used the full amount of their wild card exemption to protect a variety of property (motor vehicles, a liquor license, a shotgun and cash) valued at $15,800. *See* Schedule C—Property Claimed as Exempt. In effect, debtors used up their wild card exemption by claiming a ten dollar exemption for "[c]ash on hand." Schedule C—Property Claimed as Exempt. In their Amended Schedule C filed after debtors reopened their case, they deleted the exemption for "cash on hand" and substituted a ten dollar exemption in the property.[4]

■ There are four basic elements of an avoidable lien under § 522(f)(1)(A):

First, there must be an exemption to which the debtor "would have been enti-

---

**3.** The values listed in Cal.Civ.Proc.Code § 703.140(b) were increased in 2001. *See* Cal.Civ.Proc.Code § 703.140 historical and statutory notes.

**4.** Avoidance of a judicial lien may be allowed even if the claimed exemption amount is de minimis. *See In re Higgins,* 201 B.R. 965 (9th Cir. BAP 1996) (allowing avoidance of a judicial lien based upon impairment of a one dollar claim of exemption).

tled under subsection (b) of this section." 11 U.S.C. § 522(f). Second, the property must be listed on the debtor's schedules and claimed as exempt. Third, the lien must impair that exemption. Fourth, the lien must be ... a judicial lien. 11 U.S.C. § 522(f)(1).

*In re Mohring,* 142 B.R. 389, 392 (Bankr. E.D.Cal.1992), *aff'd,* 24 F.3d 247 (9th Cir. 1994) (table). This appeal presents issues involving the second element; the bankruptcy court held that debtors could not avoid MTC's lien because their right to amend their exemption schedule terminated upon closure of their bankruptcy case.[5] The bankruptcy court's conclusion rests on two erroneous legal premises that are distinct but interrelated. First is the premise that a debtor's ability to amend his or her exemption schedule for the purpose of avoiding a lien under § 522(f) terminates once a case is closed, regardless of whether the case is later reopened. Second is the premise that there is a difference between a never-closed case and a reopened case with respect to amended exemption claims.

**B.** *A debtor's ability to amend his or her claim of exemptions does not terminate upon case closure.*

■ In its *Oster* decision, which the bankruptcy court adopted in this case, the court reasoned as follows:

The concept of an "exemption" under section 522(b) has a specific application that relates by its own terms, to "property of the estate." The bankruptcy estate includes all of the interests in property, legal and equitable, possessed by the debtor at the commencement of

the case, and it automatically springs into existence upon the filing of the petition. Code § 541(a). In Chapter 7, property of the estate is collected and administered by the Chapter 7 trustee. Code § 704. The case is closed after the estate has been fully administered and the court has discharged the trustee. Code § 350(a). Closure of the case affects the "estate" in three significant ways: the trustee no longer has any authority over property of the estate, *all scheduled property of the estate not administered by the trustee is abandoned to the debtor* (Code § 554(c)) and the estate *ceases to exist. See Bass v. Denney, (In re Bass),* 171 F.3d 1016, 1022 (5th Cir.1999).

. . . .

Here, the Residence was originally property of the estate, but it was not "within the estate" at the time the Debtors amended their exemptions to include the Residence. Once the Debtors' interest in the Residence was abandoned to the Debtors, it was no longer "possessed by the estate." Once the case closes, and the estate ceases to exist, section 522(b) ceases to have any meaning or application to the scheduled property. There is nothing in the Bankruptcy Code which suggests that a new exemption may be claimed for scheduled property after closure of the case.

*In re Oster,* 293 B.R. 242, 247 (Bankr. E.D.Cal.2003) (original emphasis).[6]

■ The problem with the bankruptcy court's analysis is that it ignores the well-established rule that the critical date

---

5. Debtors request that we find that they were entitled to avoid MTC's judgment lien under § 522(f)(1). The ultimate disposition of debtors' motion to avoid MTC's lien is not before us in this appeal, because the bankruptcy court only ruled on the amendment issue.

6. At oral argument, appellants' counsel, who also represented the debtors in the *Oster* case, advised us that the appeal of that case to this court has been dismissed. *Oster* is not before us, but for the same reasons we reverse here, we disapprove of that decision as well.

for determining exemption rights is the petition date. *See White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Herman*, 120 B.R. 127, 130 (9th Cir. BAP 1990). "[E]xemptions … are determined on the date of bankruptcy and without reference to subsequent changes in the character or value of the exempt property[.]" *In re Chiu*, 266 B.R. 743, 751 (9th Cir. BAP 2001), *aff'd*, 304 F.3d 905 (9th Cir.2002). A debtor's § 522(f) lien avoidance rights are also determined as of the petition date. "Because lien avoidance is part and parcel of the exemption scheme, the right to avoid a judicial lien must also be determined as of the petition date." *Id.*

■■ The bankruptcy court correctly stated that scheduled property of the estate that is not administered by the trustee is automatically abandoned to the debtor pursuant to § 554(c) upon closure of the case. This is known as "technical" abandonment. However, because the petition date is the determinative date, the court's focus on the effect of case closure was misplaced. In addition, while "[p]roperty that was technically abandoned under § 554(c) is not automatically reeled back in by virtue of reopening[,]" a court may set aside a technical abandonment in appropriate circumstances. *In re Menk*, 241 B.R. 896, 914 (9th Cir. BAP 1999). *See also In re DeVore*, 223 B.R. 193, 198 (9th Cir. BAP 1998). The court's focus on abandonment of property of the estate is also problematic because, under the court's reasoning, a secured creditor could cut off a debtor's right to amend his or her exemption schedule even before a case is closed by obtaining abandonment of the property securing the debt owed to the creditor. *See* § 554(a) and (b).

■ The bankruptcy court's focus on matters of estate administration in the context of a § 522(f)(1) motion is misplaced

for an additional reason. A debtor's right to avoid a lien under § 522(f) is "a 'personal' right of the debtor which exists independent of case administration." *In re Ricks*, 89 B.R. 73, 75 (9th Cir. BAP 1988). Indeed, the purpose of lien avoidance under § 522(f) is to protect a debtor's exemptions. *In re Pederson*, 230 B.R. 158, 163 (9th Cir. BAP 1999).

■ The consequences of closing a case "are limited." *Menk*, 241 B.R. at 911. The Bankruptcy Code contemplates that various activities may occur after closing. The fact that the estate has been fully administered merely means that all available property has been collected and all required payments made. Similarly, the completion of the trustee's work does not mean that everything has been done that may need to be done. *Id.* Lien avoidance actions are among the "various activities" that may occur after a case is closed. In the absence of prejudice, lien avoidance actions are not barred either by entry of a discharge order or the closing of the bankruptcy case. *Ricks*, 89 B.R. at 75.

C. *There is no difference between a never-closed case and a reopened case with respect to amended exemption claims.*

■ The bankruptcy court, in its *Oster* decision, held that debtors may not file amended schedules in a reopened case without court approval. 293 B.R. at 249–50. We disagree. There is no basis in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure for imposing such a requirement. If the drafters had intended to require court permission before the filing of amended schedules in reopened cases, they would have explicitly said so.

■ Rule 1009(a) states that the debtor has the absolute right to amend any "list, schedule, or statement" prior to clo-

sure of the case.[7] This right to amend includes the right to amend the debtor's list of property claimed exempt. *In re Michael*, 163 F.3d 526, 529 (9th Cir.1998). "[F]or the purposes of filing amendments, there is no difference between an open case and a reopened case, and [a debtor in a reopened case does] not need the court's permission to amend." *In re Boyd*, 243 B.R. 756, 766 (N.D.Cal.2000). *See also In re Jordan*, 276 B.R. 434, 438 (Bankr. N.D.Miss.2000) (Rule 1009(a) applies in a reopened bankruptcy case).

■ The fact that a debtor in a reopened case can amend his or her exemption schedule does not mean that the debtor has an absolute right to have the amended exemption allowed. Even though Rule 1009(a) allows amendments without court permission "as a matter of course at any time before the case is closed[,]" there is no absolute right to amend schedules in bankruptcy cases. "[J]udge-made exceptions" bar amendment if the debtor has acted in bad faith or if prejudice would result. *In re Arnold*, 252 B.R. 778, 784 (9th Cir. BAP 2000). We see *no reason to apply a different standard after a case has been reopened.*

COLLIER ON BANKRUPTCY, upon which the bankruptcy court relies in its *Oster* decision, states that a debtor may have to show excusable neglect under Rule 9006 to amend an exemption schedule after the bankruptcy case has been previously closed. *See* 9 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1009.02[3] (15th ed. Rev. 2001). We disagree.

Rule 9006(b)(1) states as follows:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

The only authority cited by COLLIER is *In re Medley*, 29 B.R. 84 (Bankr.M.D.Tenn. 1983). In *Medley*, the court applied former Bankruptcy Rule 906, the predecessor to Rule 9006, because the notice of the meeting of creditors required the "debtor to file any amendment to exemption schedules within 15 days after the meeting of creditors[.]" 29 B.R. at 87.

In contrast, there is no justification for applying Rule 9006 in this case. The Federal Rules of Bankruptcy Procedure do not require that exemption schedules be amended "within a specified period[,]" Rule 9006(b)(1), and nothing in the excerpts of record suggests that the bankruptcy court in this case entered an order generally restricting the time period for amending exemption schedules, as did the bankruptcy court in the *Medley* case.

■ We acknowledge that there is some merit to the concerns expressed by the bankruptcy court in the *Oster* case. Rule 1009(a) requires that a debtor give notice of any amendment to the trustee. This requirement presents a problem in a reopened case, because a trustee is not

---

7. Rule 1009(a) states, in relevant part, as follows:

A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby . . . .

automatically reappointed when a case is reopened. Rule 5010;[8] *Menk,* 241 B.R. at 914. In this case, a trustee had not yet been appointed at the time of the hearing on debtors' motion to avoid MTC's lien. *See* Transcript of April 23, 2003 Hearing, 5:11–14. The problem is compounded by the fact that, under Rule 4003, interested parties, including a trustee, have 30 days after any amendment is filed to object to a claim of exemption, and the deadline is strictly enforced. "[P]roperty claimed exempt is 'automatically exempt' in the absence of a timely objection (regardless of whether the exemption claimed is a valid one) [.]" *In re Clark,* 266 B.R. 163, 169 (9th Cir. BAP 2001) (quoting *In re Hyman,* 967 F.2d 1316, 1319 n. 6 (9th Cir.1992)).

We conclude, however, that these concerns do not warrant the imposition of a requirement for court approval that is not supported by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. The United States trustee is charged with the responsibility of monitoring developments in reopened bankruptcy cases. In fact, Rule 1009(c) states that "[t]he clerk shall forthwith transmit to the United States trustee a copy of every amendment filed" under Rule 1009. Once notified of an amended exemption claim in a reopened case, the United States trustee can ask the court to approve the appointment of a trustee and/or seek an extension of time under Rule 4003(b) to file an objection to the amended exemption.

While we conclude that it is appropriate to place the burden of monitoring amendments in reopened cases without reappointed trustees on the United States trustee, debtors seeking to have their cases reopened to amend their exemption schedule must be careful to fully disclose that fact in their motion to reopen. If a debtor fails to make that disclosure and, as a result, there is prejudice to interested parties, that prejudice may result in denial of the amended exemption.

The approach we adopt in this case is consistent with the Ninth Circuit's policy of liberally allowing debtors to amend their exemption schedules so as to enhance their fresh start. *See Michael,* 163 F.3d at 529. The liberal rule governing amendments reflects the Ninth Circuit's "preference for resolution on the merits, as against strict adherence to formalities." *In re Anderson–Walker Indus., Inc.,* 798 F.2d 1285, 1287 (9th Cir.1986). In addition, allowing amendment in the absence of prejudice or bad faith is consistent with the procedure applicable in lien avoidance actions, which, as we discuss above, is "part and parcel of the exemption scheme" and which may be pursued through a reopened case. *In re Chiu,* 266 B.R. 743, 751 (9th Cir. BAP 2001), *aff'd* 304 F.3d 905 (9th Cir.2002).

## CONCLUSION

For the reasons set forth above, we REVERSE and REMAND for the bankruptcy court to decide whether the other prerequisites to lien avoidance are satisfied.

---

**8.** Rule 5010 states as follows:

A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12 or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.